<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STANLEY JARKA, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>WILLIAM HOLLAND a/k/a WILLIAM MAURICE HOLLAND, JR. and D.M. BOWMAN, INC.,<br><br>          Defendants. | Civil Action No. 13-01912 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, U.S.D.J.**</u>

**THIS MATTER** comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(a). (*See* ECF No. 120.) Plaintiffs ask the Court to find that Defendants were negligent as a matter of law as it relates to the collision between the train and the tractor-trailer from which this case arises. (*Id.*) Defendants opposed (*see* ECF No. 124), and no reply was submitted. The Court has carefully considered the parties' submissions, and it decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth herein, and other good cause shown, Plaintiffs' Motion for Partial Summary Judgment in **DENIED**.

## I.   BACKGROUND[1]

### A.  Procedural Background

This case has a lengthy procedural history, and familiarity with the Court's prior opinions,[2] and the factual and procedural background recited therein, is presumed.[3]

Plaintiffs Stanley Jarka, Crystal Jarka, Shina DeShong, and Lauren Dunham are four residents of New Jersey, three of whom were employed by New Jersey Transit Rail Operations, Inc. (the exception is Crystal Jarka, the wife of Stanley Jarka). (ECF No. 67 ¶¶ 1-3, 11.)  On the evening of November 12, 2012, the three Plaintiffs employed by New Jersey Transit were injured when the train they were on struck a tractor-trailer driven by Defendant William Holland ("Holland") for his employer Defendant D.M. Bowman, Inc. ("Bowman"). (*Id.* ¶¶ 11-14.)  The truck was blocking the train tracks after Holland had tried to make a right turn and become stuck in the gauge of the tracks. (*Id.* ¶ 13.)

Plaintiffs Stanley Jarka, DeShong, and Dunham brought this personal injury lawsuit to recover for the injuries they suffered when they were thrown about the train as a result of the collision. (*Id.* ¶¶ 14, 25-30, 32-37, 38-43.)  Plaintiff Crystal Jarka seeks to recover for loss of consortium resulting from her husband's injuries. (*Id.* ¶ 31.)

On November 16, 2020, the Court granted in part and denied in part Defendants' Motion for Partial Summary Judgment. (*See generally* ECF Nos. 99 & 100.)  The Court ruled that

---

[1]   Citations to page numbers within record documents (*i.e.*, "ECF Nos.") typically refer to the page numbers stamped on the document by the Court's e-filing system.  For citations to transcripts, however, the Court refers to the page and line numbers paginated by the reporter.

[2]   Prior opinions include *Jarka v. Holland*, Civ. No. 13-1912, 2018 WL 4144688 (D.N.J. Aug. 30, 2018), and *Jarka v. Holland*, Civ. No. 13-1912, 2020 WL 6707955 (D.N.J. Nov. 16, 2020).

[3]   The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs' claims of direct corporate liability against Bowman were not barred by the statute of

limitations but that the claims for punitive damages failed as a matter of law because the facts did

not suggest that Defendants had acted with "actual malice."[4]  (ECF No. 99 at 5-11.)

On November 29, 2022, Plaintiffs moved for partial summary judgment, asking the Court

to find "as a matter of law that . . . [D]efendants were negligent with regard to the accident involved

in this lawsuit."  (ECF No. 120 at 1.)  Defendants opposed on December 19, 2022.  (ECF No. 124.)

**B.  Undisputed Facts[5]**

The present case arises from a collision between a tractor-trailer and a train that occurred

sometime shortly after 7:00 p.m. on November 12, 2012 (a clear night), at Station Road in

Branchburg, New Jersey.  (SMF & RSMF[6] ¶¶ 1, 21; ECF No. 120-6 at 69:1-3.)  The tractor-trailer

was owned by Bowman (a Maryland corporation also headquartered there) and operated by

Bowman's employee Holland at the time of the collision.  (SMF & RSMF ¶¶ 5-6, 39.)  Holland

had been an active solo driver for a little more than two weeks prior to the collision.  (ECF No.

120-6 at 74:23-75:2.)

On the evening in question, Holland was trying to drive the tractor-trailer to a local business

when he became lost; he had "made a wrong turn" and "got turned around."  (SMF & RSMF ¶¶

8-11.)  Upon realizing that he was lost, Holland did not contact Bowman; instead, Holland parked

his truck and asked a person in the neighborhood for directions, which Holland then followed.

---

[4]     Plaintiffs' motion for partial reconsideration was denied.  (*See* ECF Nos. 105 & 106.)

[5]     On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the
underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark New
Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v.
United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

[6]     Plaintiffs' Statement of Material Facts is at ECF No. 120-1 ("SMF"), and Defendants'
Response to Plaintiffs' Statement of Material Facts is at ECF No. 124-2 ("RSMF").

(SMF & RSMF ¶¶ 12-15.)  Holland was off-route, and the local roads were not designed for the type of truck he was in.  (SMF & RSMF ¶ 29.)

Holland made a right turn from Central Avenue onto Station Road despite having been informed that "the [train] tracks were there."  (SMF & RSMF ¶¶ 17-18.)  While making the turn, the front wheels of the tractor-trailer became stuck in the gauge of the tracks.  (SMF & RSMF ¶ 20.)  Holland was attempting to back his truck off the tracks when a police officer arrived at the scene, warned Holland that it was a live track, and instructed him to exit the vehicle.  (SMF & RSMF ¶¶ 22-23.)  After doing as instructed, Holland saw the oncoming train, which struck the nose of the truck, moving it off the tracks.  (SMF & RSMF ¶¶ 23, 26.)

Holland was issued at least five traffic citations stemming from the collision, including for reckless driving, improper turn, parking within an intersection, obstructing passage, and for driving a vehicle over the weight limit.  (ECF No. 120-5 at 118:1-5; ECF No. 120-10 at 3.)  Bowman fired Holland almost immediately after the collision.  (SMF & RSMF ¶ 46.)

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 56 – Summary Judgment

"Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).  Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)).  "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)).  "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

## III.   DISCUSSION

### A.  Negligence of Holland and Bowman for Collision

Under New Jersey law,[7] "[t]he fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *G.A.-H. v. K.G.G.*, 238 N.J. 401, 413 (2019) (quoting *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014)).  "Ultimately, while the factual record is viewed under the summary judgment standard, 'whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide.'"  *Id.*

It has long been recognized that both railway companies and motorists have duties of care at grade crossings.  In *Jelinek v. Sotak*, which involved "a collision between an automobile delivery truck . . . and . . . a diesel locomotive," the New Jersey Supreme Court set forth that at crossings both the railway company and the traveler "must exercise care and diligence in regard to [t]heir respective duties, and are charged with the [m]utual duty of exercising reasonable care to prevent injury.  Each must make reasonable and proper efforts, in view of the circumstances, to foresee and avoid collisions; and each may, [t]o a limited extent, rely upon the other to exercise such ordinary care."  9 N.J. 19, 21, 23 (1952) (quoting *Rafferty v. Erie R. Co.*, 66 N.J.L. 444, 450 (Sup. Ct. 1901)).  The Court further stated that whether such duties have been exercised with reasonable care "under all the facts and circumstances is usually a matter for the jury to determine."  *Id.*

---

[7]     The parties cite New Jersey law in their respective briefs, and because this is a diversity action stemming from a collision that occurred in New Jersey, the Court finds that the application of New Jersey law is appropriate.  *See Wilchek v. Chaney*, 163 F. Supp. 199, 199 (D.N.J. 1958) ("Since this is a diversity case, and the accident occurred in New Jersey, New Jersey law applies." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941))).

The duty of motorists to exercise due care when passing through grade crossings has been reiterated by New Jersey courts after *Jelinek* as well.  *See, e.g., Bowman v. Cent. R. Co. of N.J.*, 27 N.J. Super. 370, 374 (App. Div. 1953) ("[M]otorists in the exercise of due care, recognizing the train's right of way, will not attempt to cross the tracks in front of the approaching train."); *Lopez v. New Jersey Transit*, 295 N.J. Super. 196, 204 (App. Div. 1996) ("Grade crossings are designed, of course, for the use of both the railroad and people seeking to pass over the tracks.").

Here, Plaintiffs ask the Court to find that, as a matter of law, Defendants breached their duty of care and were negligent when, on the night of November 12, 2012, Holland turned Bowman's tractor-trailer onto the grade crossing at Station Road and the truck became stuck in the gauge of the tracks shortly before the collision.  In support of their motion, Plaintiffs cite several pieces of evidence that they maintain proves negligence:  *First*, they submit that both Holland and Bowman's Director of Risk Management and Safety, Barry Wertz ("Wertz"), admitted during their depositions that Holland had been negligent. (ECF No. 120-2 at 13.)  *Second*, Holland did not follow Bowman protocol and did not contact the company when he became lost; instead, Holland asked a person in the local neighborhood for directions.  (*Id.* at 14.)  *Third*, Holland drove his truck on roads with posted signs that stated that vehicles should not exceed four tons and made a right turn onto Station Road despite a "no right turn" sign. (*Id.*)  *Fourth*, Holland did not contact New Jersey Transit nor did he call 911 while the tractor-trailer was stuck.[8]  (*Id.*)  And *fifth*, Holland was discharged by Bowman after the collision and issued at least five traffic

---

[8]    Plaintiffs repeatedly write that Holland had "a company cell phone," but the deposition testimony they cite in support from Wertz does not appear to confirm that alleged fact. (ECF No. 120-2 at 14.)  Wertz testified that Holland had a cell phone in his position at the time of the accident, but does not state that it was "a company cell phone." (ECF No. 120-6 at 58:2-6 ("Q. Did you ascertain that Mr. Holland did have a cell phone in his possession at the time of the accident? A. Yes. Mr. Holland had a cell phone in his possession at the time of the accident.").)  In any event, this discrepancy is not material to the resolution of the motion.

citations.[9]  (*Id.* at 14-15.)

Defendants oppose, arguing that the question of negligence should be left to the jury.  (ECF No. 124 at 7-8.)  They submit that, "[w]hen examined, [Plaintiffs'] arguments are the product of myopathy and misrepresentations.  They either ignore the entirety of the record to the extent it conflicts with their intended ends or . . . misrepresent the record to achieve their ends contrary to the record."  (*Id.* at 8.)  Defendants aver that there are issues of material fact that could, drawing all reasonable inferences in their favor, lead a jury to find that Defendants were not negligent.  (*Id.*)

Having carefully reviewed and considered the evidence in support and opposition to this motion for partial summary judgment as well as the parties' arguments, the Court finds that it is not in a position to determine as a matter of law that Holland/Bowman were negligent.  The Court ultimately agrees with Defendants that the record evidence presents a somewhat more complicated narrative than the one advanced by Plaintiffs in their papers.  Although there is certainly evidence that could be relied on to legitimately infer that Defendants' negligence was the cause of the collision, there are disputed inferences and testimony, and the Court finds that the question of negligence is more appropriately submitted to a jury to consider the evidence as well as the factual circumstances and to render a determination, as is the usual course in negligence cases.  *See, e.g.,* *Morsey v. Erle*, 4 N.J. 276, 280-81 (1950) ("A consideration of all the evidence clearly indicates a complex of circumstances from which legitimate inferences may be reasonably drawn that there was negligence on the part of the defendant which proximately caused the collision . . . .  There was no error in the trial court's submission of the case to the jury."); *Transamerica Ins. Co. v. Keown*, 451 F. Supp. 397, 402 (D.N.J. 1978) ("Summary judgment in negligence cases is

---

[9]     Plaintiffs write that Holland was issued six traffic citations, but deposition testimony and the documents attached to the motion appear to reflect five citations, not six.  (*See* ECF No. 120-10 at 3; ECF No. 120:5 at 118:4-5 ("Q. There were five all together; correct?  A. That is correct.").)  Again, this discrepancy is not material to the resolution of the present motion.

exceptional."); *see also* Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2729 (4th ed. Apr. 2023) ("Although a motion for summary judgment under Rule 56 may be made in any civil action, it is not commonly interposed, and even less frequently granted, in negligence actions.  This is not surprising given the fact that particular deference has been accorded the jury in this class of cases in light of its supposedly unique competence in applying the reasonable person standard to a given fact situation. . . .  [E]ven when there is no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable-person standard.").

Plaintiffs insist that Holland and Wertz both admitted during their depositions that Holland's negligence caused the collision; however, the testimony is not as straightforward as Plaintiffs contend.  Indeed, during his deposition, Holland repeatedly rejected the notion that he had been negligent.  When asked whether he had been negligent in making the turn that led to the truck getting caught on the tracks, Holland testified that he did not believe he was negligent and he did not "see where it's negligent because the truck got stuck." (ECF No. 120-5 at 142:9-143:2; *see also id.* at 142:14-16 ("Q. Were you negligent . . . ?  A. Oh, no, I wasn't negligent, no.").) Wertz was more conciliatory, testifying that Holland should not have been driving in the neighborhood where the collision occurred and that Bowman's insurance carrier paid for property damage to the train because their determination was that they were "at fault for the claim" and "at fault for the accident." (ECF No. 120-6 at 10:6-14, 52:20-53:17.)  Even Wertz, however, noted that there were a variety of factors that contributed to the collision, testifying that, "[f]rom [Wertz's] investigation, [he] believe[d] [Holland] did everything he could do [to get the truck off the tracks].  There were factors that [Holland] couldn't control.  One of those was the truck was empty which caused issues with traction, enough weight to be able to get traction to pull himself back off the tracks." (*Id.* at 11:2-7.)  Wertz also noted that, in addition to Holland making "a bad turn," he believed "[t]here were contributing factors that there were people at the scene that failed

to contact the train company, New Jersey Transit, to say there was a truck stuck on the tracks."
(*Id.* at 53:24-54:5.)   Although the above-quoted testimony, particularly Wertz's, may prove
compelling at trial for establishing Holland/Bowman's alleged negligence, it is not enough for the
Court to determine as a matter of law that Defendants have admitted negligence.

Plaintiffs' next point is that Holland's failure to contact Bowman for directions when
Holland became lost is evidence of negligence.   While Holland's failure to follow Bowman's
protocols may be something Plaintiffs seek to introduce at trial, it does not suffice as a matter of
law to allow the Court to find negligence.   Holland's handwritten statement from the night of the
collision explains that, after he was lost, "a passerby told [him] to go to the end of the street and
make a right." (ECF No. 120-10 at 18.)   Holland "asked . . . if [his] truck w[ould] be able to get
thr[ough] and make the turn.   [The passerby] said yes. . . .   [Holland] did not see the train tracks
until [he] was on them.   The truck got stuck and [he] could not get off the tracks." (*Id.*)   There is
a chance that a jury could find that Holland's reliance on this guidance was reasonable under the
circumstances, even if it was not in accordance with Bowman's own directives to its drivers.

Plaintiffs fault Holland for driving his truck on roads that had signs posted that stated that
vehicles heavier than four tons should not be driven there and for making a right turn where there
was allegedly a "no right turn" sign.   Again, these signs may be evidence to consider at trial, but
there appear to be disputes of fact as to what signs were and were not present on the evening in
question and what Holland may have been aware of.   Holland testified that he did not see a sign
that said trucks over four tons were not allowed on the road that he was driving on (*see* ECF No.
120-5 at 143:13-144:9), and Holland does not appear to have been asked at his deposition about a
"no right turn" sign.   A picture of the "no right turn" sign at the intersection of Central Avenue
and Station Road (the location of the grade crossing) is attached to one of Plaintiffs' expert reports,
but the picture appears to have been taken during a site visit in July 2014, nearly two years after

the accident. (*See* ECF No. 120-8 at 44 (photo stamped with the date "07/29/2014").) Moreover, Defendants cite the deposition testimony of Sergeant Kenneth Kaczorek of the Branchburg Police Department, in charge of its Traffic Safety Division since 2009, who attested that he believed the "sign 'commercial trucks no right turn'" and another sign stating "vehicles over four tons no right turn" were put up *after* the collision, which would mean that Holland would not have had the benefit of them in November 2012. (ECF No. 124-15 at 5:22-6:5, 27:17-28:7.)

Plaintiffs also take issue with Holland's failure to contact New Jersey Transit or 911 during the time that the tractor-trailer was stuck on the tracks prior to the collision.[10]  However, as Defendants underscore, Holland testified that he had been informed that 911 had been called by an individual stopped at the tracks when Holland was making his turn. (ECF No. 124-3 at 27:10-27:20 ("Q. Did you call the police?  A. No, another patron did. . . . It was a guy sitting at the tracks when I was making the turn.").)  And as Defendants contend, the sign at the scene with New Jersey Transit's phone number posted was arguably at a distance and in a location that may not have been readily apparent. (ECF No. 120-8 at 46.)  In view of this, it is more appropriate for a jury to decide if Holland's decision not to call anyone during the short period of time his truck was stuck on the tracks before the collision was reasonable under the circumstances.

Finally, Plaintiffs point to the fact that Holland was discharged by Bowman and that Holland received five traffic citations.  Nevertheless, Plaintiffs do not argue that any of the traffic citations are sufficient on their own to establish negligence *per se*, and New Jersey's courts have held that traffic violations can be used as evidence of negligence but do not ordinarily constitute negligence on their own unless it is shown that the Legislature intended the specific traffic

---

[10]     Plaintiffs assert that the truck was stuck for fourteen minutes before the collision, but it is denied by Defendants and it is unclear to the Court what piece of evidence Plaintiffs are relying on to establish that precise timeframe. (SMF & RSMF ¶ 24.)

violations to encompass the common law duty of care. *See, e.g., Costanza v. Cavanaugh*, 131 N.J.L. 175, 178 (E. & A. 1944) ("The mere failure to obey a traffic regulation is not *per se* negligence; that is, failure to observe it is not necessarily a contributing cause to the accident. Whether in a given case it is or is not is a matter to be determined by a jury." (quoting *Baker v. Fogg & Hires Co.*, 95 N.J.L. 230, 233 (E. & A. 1920))); *Giantonnio v. Taccard*, 291 N.J. Super. 31, 45 (App. Div. 1996) ("The determination that a party has violated a statutory duty ordinarily is not conclusive on the issue of negligence, but instead is a circumstance which the jury should consider in assessing liability.").

In conclusion, while there is evidence in the record that could support a finding that Holland/Bowman were negligent and their negligence caused the November 12, 2012 collision, the Court does not believe that the record before it rises to the level that would make this so "exceptional" a case as to warrant the Court taking the issue from the jury as a matter of law. Under the circumstances, the Court believes that the question of negligence is one that is properly decided at trial. *See Lewis v. New Jersey Exp. Corp.*, 309 F.2d 394, 394 (3d Cir. 1962) ("The record unmistakably shows substantial eye-witness evidence that the accident involved was caused by the negligence of the appellant driver and that the operator of appellee's truck was not at fault. There is also evidence to the contrary. In the circumstances the district judge, most properly submitted those factual questions to the jury."); *Mattero v. Silverman*, 71 N.J. Super. 1, 5 (App. Div. 1961) ("While the testimony relating to the particulars of the accident was somewhat in dispute and susceptible of conflicting inferences which required that the issues of negligence, contributory negligence, and causation, be submitted to the jury . . . .").

**B. Corporate Liability of Bowman**

"Unlike *respondeat superior*, negligent hiring, supervision, and training are not forms of vicarious liability and are based on the direct fault of an employer." *G.A.-H.*, 238 N.J. at 415-16

(first citing *Schultz v. Roman Cath. Archdiocese of Newark*, 95 N.J. 530, 534-35 (1984); and then citing *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007)).  "To be found liable for negligent supervision or training, the plaintiff . . . must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages."  *Id.* at 416 (citing *Di Cosala v. Kay*, 91 N.J. 159, 173-74 (1982)).

Here, in addition to asking the Court to find that Bowman was vicariously liable for Holland's alleged negligence, Plaintiffs ask the Court to find Bowman directly liable for failing to adequately train Holland.  (ECF No. 120-2 at 15-19.)  Plaintiffs direct the Court's attention to various record evidence that they submit supports their position that the training provided by Bowman did not sufficiently prepare Holland for the situation he found himself in on November 12, 2012.  (*Id.*)

In opposition, Defendants contest whether the record evidence actually supports Plaintiffs' claim of negligent training.  (ECF No. 124 at 13-21.)  Defendants also argue that where, as here, the Court has ruled that there is no claim for punitive damages and Bowman has accepted that it can be held vicariously liable for Holland's alleged negligence, there is no basis to allow "any direct claims of corporate liability against Bowman."  (*Id.* at 14-16.)

In support of this latter argument, Defendants cite two cases:  *Testa v. Senn Freight Lines, Inc.*, Civ. No. 14-0117, 2016 WL 465459 (E.D. Pa. Feb. 8, 2016), and *Fallon v. Marxen & A.P.A. Transp., Inc.*, Civ. No. 95-1546, 1997 U.S. Dist. LEXIS 24793 (D.N.J. July 25, 1997).  In *Testa*, the district court granted defendants' partial summary judgment motion, dismissing the claim of corporate negligence and citing precedent from Pennsylvania's district courts for the proposition that "claims for negligent hiring, entrustment, training and supervision, are simply not permitted when an employer admits that its employee was acting in the scope of his employment at the time

of the accident, and the plaintiff does not have a viable claim for punitive damages against the employer." 2016 WL 465459, at *3-4 (citing *Sterner v. Titus Transp., LP*, Civ. No. 10-2027, 2013 WL 6506591, at *3 (M.D. Pa. Dec. 12, 2013)).  Similarly, in *Fallon*, the district court granted defendants' partial summary judgment motion, ruling that "[w]here . . . an employer admits that an employee was acting within the scope of employment, a negligent entrustment claim is 'unnecessary, prejudicial and redundant'" and speculating "that, if faced with such a situation, the courts of the State of New Jersey would also adopt this rule."  1997 U.S. Dist. LEXIS 24793, at *10 (quoting *Hackett v. Wash. Metro. Area Transit Auth.*, 736 F. Supp. 8, 9 (D.D.C. 1990)).

The Court will not now reach the question as to whether Plaintiffs can maintain a claim for negligent training against Bowman where Bowman has admitted that Holland was acting within the scope of his employment and it has been held that there is no claim for punitive damages. Unlike the defendants in *Testa* and *Fallon*, Defendants in this case have yet to move for partial summary judgment on that ground, and because Plaintiffs did not file a reply in support of the present motion, the Court has not benefitted from an opportunity for full briefing on the issue.

As to Plaintiffs' argument that the record establishes that Bowman was negligent in its training, the Court once again finds that there are disputed facts and inferences that would warrant the issue being submitted to a jury for its consideration, not decided now as a matter of law.

Before joining Bowman, Holland attended the North American Trade School from March 2012 to August 2012, receiving 200 hours of behind-the-wheel and classroom instruction.  (ECF No. 124-3 at 20:14-24; ECF No. 124-6 at 4, 20.)  At the conclusion of this training, Holland passed the written and driving tests and secured his commercial driver's license from the State of Maryland.  (ECF No. 124-6 at 4-5.)  After being hired by Bowman, Holland then received an additional 200+ hours of behind-the-wheel and non-driving training and instruction across six weeks prior to being allowed to drive solo.  (*Id.* at 20; ECF No. 124-3 at 22:3-9; ECF No. 124-7.)

13

And Wertz testified that once Holland was on the road, Bowman tried to assign him an easier route "away from the real congested areas." (ECF No. 120-6 at 79:1-20.)

Notwithstanding this training and these precautions, Plaintiffs fault Bowman for, among other things, (1) not training Holland as to his duties at a grade crossing; (2) not instructing Holland "about an essential driving operation involving his gears known as using the inter axle differential lock"; and (3) Bowman's trainers releasing Holland to drive solo even though Holland "still needed assistance with planning his trip," "still needed assistance with gear shifting," and "still needed assistance with making wide turns." (ECF No. 120-2 at 16-19.) The evidence, however, is not as clear as Plaintiffs suggest.

During his deposition, Holland testified that he had been trained as to how to drive over train tracks, which included driving routes with a trainer and "going to . . . where there are train tracks at sometimes." (ECF No. 120-5 at 66:13-67:11.) He also testified that before joining Bowman he had received a manual that instructed him as to how to shift his truck into low gear and to set the inter-axle differential lock to provide more traction for the tires, but that he had never been required to perform it before taking the tractor-trailer on the road. (*Id.* at 84:3-86:23.)

Wertz testified that, before Holland drove solo, Wertz had spoken to the individuals at Bowman who had trained Holland and that they had stated that Holland "was doing all right and ready to be released" and that they "had found nothing of . . . issue[] with [Holland] as noted in his progression in the file[s]." (ECF No. 120-6 at 43:18-44:7.) Wertz further testified that if Bowman had been "aware of a significant problem" with Holland's driving or turning, they "would have kept him in training longer" and "wouldn't have released him." (*Id.* at 49:9-14.) And Beulah Crist ("Crist"),[11] the trainer who oversaw Holland during his sixth and final week of training at

---

[11]     Although Plaintiffs criticize Crist's professional background, she testified that she had started driving trucks in 1998, attended training school at Harrisburg Community College,

14

Bowman, testified that she thought Holland had turned his corners "very well" and "did not hit any curbs, no signs, no gutters. He did real well." (ECF No. 124-8 at 37:5-14.) Crist also testified that while she did not train Holland about how to turn onto tracks, she instructed him that "[w]hen you come to a railroad track, you slow up, look both ways, and proceed cautiously across the tracks" and that she "always told . . . trainees to clear the tracks before you do anything. You don't mess with railroad tracks." (*Id.* at 41:17-42:11, 45:13-17.)

Although Plaintiffs point to competing evidence, including safety analyses and other experts reports they had produced (*see* ECF Nos. 120-8 & 120-9) to support their claim that the training was inadequate and that better training may have prevented the collision, there is enough in the record to foreclose the Court from determining as a matter of law that Bowman is directly liable for negligent training. On this record, the question is one to be decided by a jury that can evaluate the competing evidence and inferences at trial.

## IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, Plaintiffs' Partial Motion for Summary Judgment (*see* ECF No. 120) is **DENIED**. An appropriate Order follows.

Dated: July 14, 2023

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

---

obtained her commercial driver's license from Pennsylvania, and had approximately fourteen years of experience in trucking. (ECF No. 124-8 at 8:21-11:6, 26:12-17.)